State v. True.

STATE OF TENNESSEE *et al. v.* H. .C. TRUE *et al.*

(*Nashville.* December Term, 1905.)

1. **CONSTITUTIONAL LAW.** Statute for collection and disbursement of public school funds is not unconstitutional as embracing more than one subject.
A statute (Acts 1897, ch. 36) whose caption provides for the collection and disbursement of the public school funds and whose body provides for settlements and reports to be made by the county trustee and for reports to be made by the county superintendent of schools as to the public school funds of the county, and makes it the duty of the state superintendent of public instruction to employ counsel to institute suit to recover and collect any school funds misappropriated, illegally disposed of, lost or uncollected, and provides for the compensation of such counsel and makes it a misdemeanor to fail to make the said reports, is valid and constitutional, and is not unconstitutional as embracing more than one subject, nor as embracing matters in the body of the act not within the purview of the caption. (*Post, pp.* 298-307.)

Constitution cited and construed: Art. 2, sec. 17.

Act cited and construed: Acts 1897, ch. 36.

2. **PUBLIC SCHOOL FUNDS.** Suit to recover counsel fees ille gally paid out of county school funds may be prosecuted by state superintendent of public instruction.
A suit instituted in the name of the State by the state superintendent of public instruction to recover a fee illegally paid out of the school funds upon a warrant of the chairman of the county court to an attorney employed by him in a suit to prevent the illegal appropriation of the school funds of a county by a municipal corporation under an unconstitutional statute, is authorized by a statute (Acts 1897, ch. 36, sec. 6), making

State v. True.

it the duty of such superintendent to employ counsel and empowering him to do so, to recover and collect any school funds of a county misappropriated, illegally disposed of, lost or uncollected. (*Post, pp.* 302, 303, 307, 310, 311.)

Acts cited and construed: 1897, ch. 36, sec. 6.

3. **CHAIRMAN OF COUNTY COURT.** Power to employ counsel is confined to defense of suits against county; power in quarterly court in all other cases.

The chairman of a county court has no authority to bring suit for the county, nor to employ counsel for such purpose, for such power is vested solely in the quarterly court; and his power to employ counsel is confined to cases where the county is sued, without power to fix the fee, which must be fixed by the court trying the case. (*Post, pp.* 307, 308.)

Code cited and construed: Sec. 660 (S); 577 (M. & V.); 520 (T. & S.)

Cases cited and approved: Holtzclaw v. Hamilton Co., 101 Tenn., 340; McHenderson v. Anderson Co., 105 Tenn., 579.

4. **PUBLIC SCHOOL FUNDS.** Quarterly court cannot employ counsel to prevent misappropriation of.

The quarterly court of a county has no authority to employ counsel and procure a suit to be brought to prevent a misappropriation of the public school funds in the hands of the county trustee, for this power is vested in the state superintendent of public instruction. (*Post, pp.* 309, 310.)

Code cited and construed: Sec. 1395 (S); Sec. 1167 (M. & V.)

Act cited and construed: Acts 1897, ch. 36, sec. 6.

5. **SAME.** Suit in name of State, for use of school districts, or scholastic population, is sufficient to recover.

It is sufficient that suit is brought in the name of the State by the state superintendent of public instruction for the use of the school districts or scholastic population to recover school funds misappropriated, illegally disposed of, lost or uncollected. (*Post, pp.* 310, 311.)

State v. True.

Act cited and construed: Acts 1897, ch. 36, sec. 6.

Case cited and approved: State v. Knoxville, 115 Tenn., 175.

6.  **SAME.** Action by school districts, citizens, taxpayers, and scholastic population for illegal distribution of.

The school districts affected, and their citizens, taxpayers, and scholastic population, can maintain an action for the illegal distribution of the school funds. (*Post, p.* 311.)

Case cited and approved: Finney v. Garner, 110 Tenn., 67.

7.  **COUNTY COURT.** Whether monthly or quarterly, its jurisdiction and powers are purely statutory.

The county court, whether monthly or quarterly, has only such jurisdiction and powers as may be vested in it by statute, and the statute conferring the same must be pointed out by the party relying upon the action of the court. (*Post, p.* 311.)

Cases cited and approved: Salary Cases, 110 Tenn., 370; Johnson v. Brice, 112 Tenn., 59.

8.  **EVIDENCE.** Parol evidence is inadmissible to show proceedings, of quarterly court, when.

Parol evidence is inadmissible to show the proceedings, judgments or decrees of the quarterly county court not made of record by entry on the minutes of the court, required to be kept for that purpose, and to be signed. (*Post, pp.* 301, 312, 313.)

Cases cited and approved: Brooks v. Claiborne Co., 8 Baxt., 46; Fraker v. Brazelton 12 Lea, 280-281.

9.  **CHAIRMAN OF COUNTY COURT.** Cannot draw warrants without appropriation by quarterly court, or by express statutory authority.

The chairman of the county court cannot draw a warrant upon the treasury of the county for any funds in the hands of the county trustee, in the absence of express statutory authority, without an appropriation having first been made by the quarterly court when the least three-fifths of the members are in attendance, and a majority of them voting for the appropriation. (*Post, pp.* 313, 314.)

State v. True.

Code cited and construed: Secs. 493, 6015-6019 (S); 459, 4970-4974 (M. & V.); 402, 4195 (T. & S. and 1858.)

Cases cited and approved: Connell v. County Judge, 2 Head, 190; State v. Kelly, 111 Tenn., 583.

10.  **COUNSEL FEES.**  Cannot be paid out of school fund by chairman of the county court for services in suit for protection of school funds.

Where an attorney is employed by the chairman of a county court, or even by the quarterly court, in a suit to prevent the illegal appropriation of the school funds of the county by a municipal corporation under an unconstitutional ·statute, and his fee is .paid by the county trustee upon a warrant drawn by the chairman of the county court upon the school fund of the county, an action will lie against the attorney, the said chairman and his sureties, to recover said amount so paid; for there can be no implied promise to pay such fee, when there was no power to contract for it by said parties, and where the state superintendent of public instruction had no knowledge of such suit.  (*Post, pp.* 307, 314, 315.)

Case cited and approved: Waterson v. Nashville, 106 Tenn., 410.

Case cited and distinguished: Land Co. v. Jellico, 105 Tenn., 320.

11.  **SAME.**  Decree for, to be paid out of the school funds, is nugatory, when.

The decree of the chancery court ordering an attorney's fee to be paid out of the school fund for services rendered by the attorney at the instance of the chairman of the county court, in a suit to prevent the illegal application of the school funds, is nugatory.  (*Post, pp.* 315, 316.)

Case cited and approved: State v. Spurgeon, 99 Tenn., 666.

State v. True.

FROM ROBERTSON.

Appeal from the Chancery Court of Robertson County.—J. W. Stout, Chancellor.

R. L. Peck and E. A. Hicks, for complainants.

A. E. Garner, H. N. Leech, Joel B. Fort and W. W. Pepper, for defendants.

Mr. Justice Shields delivered the opinion of the Court.

This suit was brought May 4, 1901, by the State of Tennessee, the county of Robertson, and Morgan C. Fitzpatrick, then state superintendent of public instruction for Tennessee, for the use, etc., against H. C. True, a lawyer practicing his profession in Robertson county, Tennessee, C. G. Holman, and others, his official sureties as former chairman of the county court of Robertson county, and I. N. Dorris and others, his official sureties as former trustee of Robertson county, to recover one thousand dollars and interest thereon, paid Mr. True by I. N. Dorris as trustee out of the funds in his hands, held for the use of the public schools of the county, upon a war-

rant issued to Mr. True by C. G. Holman as chairman of the county court of said county, in payment of a fee claimed by Mr. True for services rendered under employment by Mr. Holman, as chairman, in a suit brought in the name of Robertson county against the mayor and aldermen of the town of Springfield and the said I. N. Dorris, as county trustee, for the purpose of preventing a misappropriation of public school funds then in the hands of the said trustee, arising from taxes levied and collected in the territorial boundaries of Springfield, for the maintenance of the public schools.

The gravamen of complainant's bill is that the bringing of said suit, the employment of Mr. True, and the payment of a fee of one thousand dollars to him out of the funds belonging to the public schools of Robertson county, were all unauthorized and without warrant of law, and also that the suit was unnecessary and the fee paid exorbitant, and that Mr. True, C. G. Holman, and I. N. Dorris in this way misappropriated and illegally disposed of that much of said school funds, and should be held to account for the same. It is brought under chapter 36 of the Acts of 1897.

The defendants demurred to the bill, challenging the right of M. C. Fitzpatrick, state superintendent of public instruction, to bring and maintain it, upon the ground that the statute under which it was brought was unconstitutional and void, and if valid, did not authorize a suit for the relief herein sought. This demurrer was overruled, and all the parties answered, relying up-

on the defenses made by their demurrers, and others, which will appear further on in this opinion.

The chancellor, upon the hearing before him, was of the opinion that the employment of Mr. True to bring the suit of *Robertson county* v. *The Mayor and Aldermen of the town of Springfield and others,* was unauthorized, but that the services were beneficial to the county, and that he was entitled to recover or retain their value, which he fixed at six hundred dollars, and gave a decree against the defendants True and Holman for the remainder of the sum paid the former, with interest from the date of payment. The bill was dismissed, so far as it sought relief from I. N. Dorris.

The complainants and the defendants True and Holman all appealed to this court, and assigned errors.

The cause was heard by the court of chancery appeals, and that court overruled the chancellor, sustained the demurrer of the defendants, and dismissed the bill of complainants; from that decree complainants have again appealed and assigned errors.

The material facts found by the court of chancery appeals, after stating that the general assembly of Tennessee passed an act April 17, 1899 (Acts of 1899, ch. 232), amending the charter of the municipality of Springfield, by the forty-second section of which it was provided that "all school taxes collected within the limits of the corporation of the town of Springfield by the county trustee and other officers collecting them, be paid over to the treasurer of the said town of Springfield,

State v. True.

who shall hold the same for school purposes," are these:
That C. G. Holman, as chairman of the county court of
Robertson county, employed Mr. True to bring a bill in
the chancery court of Robertson county to have the stat-
ute stated, and particularly section 42, declared uncon-
stitutional and void, and to enjoin the trustee of the
county from complying with its terms, which was then
being demanded of him by the officers of the town of
Springfield; that a bill was filed by Mr. True, under this
employment, and a preliminary injunction obtained;
that the quarterly court of Robertson county, while the
bill filed was yet pending, when informed by chairman
C. G. Holman that he had employed Mr. True to file this
bill for and in the name of the county, and that it had
been done, upon motion made for that purpose, and car-
ried, approved his action in the matter and continued the
employment of Mr. True, with instructions to vigorously
prosecute the case, but that no record whatever was made
upon the minutes of the court of either the statement of
the chairman or the motion and action thereon by the
court, the evidence of these facts resting in parol only;
and that, afterwards, the case was successfully prose-
cuted by Mr. True for the complainant, and a decree
obtained holding the objectionable section invalid and
perpetually enjoining the trustee of the county from
complying with its terms, and directing that the fee of
Mr. True for services rendered the county in the case,
without fixing the amount, be paid out of the fund claim-

ed to have been protected, and then in the hands of the trustee of the county.

That, after this decree was entered, but without any appropriation of the quarterly court of the county for that purpose, the defendant Holman, as chairman, agreed to pay Mr. True a fee of one thousand dollars for his services in said cause, and drew his warrant therefor in Mr. True's favor upon the trustee of the county, payable out of the funds then in his hands belonging to the public schools of the county, which, on presentation, was paid. The court of chancery appeals also found that, while the matter was uncertain and difficult of a correct estimate upon the basis adopted by it, the fund claimed to have been protected by the bill of *Robertson county* v. *The Mayor and Aldermen of the town of Springfield* was from $3,500 to $8,000.

This suit, as heretofore stated, is brought under the authority of chapter 36 of the Acts of 1899, upon the theory that the employment of Mr. True and the fixing of the amount of his fee, were illegal and void, and its payment out of the funds belonging to the public schools of Robertson county a misappropriation and unlawful disposition of said funds, and for the purpose of recovering them for the use and benefit of the said schools.

The first question presented in the record arises upon the demurrer interposed by the defendants, challenging the right of Morgan C. Fitzpatrick, state superintendent of public instruction, to bring and maintain this suit. This demurrer is based upon the contention that

the statute under which the suit is brought violates art. two, section 17, of the constitution of Tennessee, in that, as claimed, it embraces more than one subject, and further, if the statute is valid, this case does not come within its provisions.

We are of opinion that these positions are both unsound. The caption of the statute (chapter 36 of the Acts of 1897) is in these words:

"An act to provide for the collection and disbursement of the public school funds."

The body of the statute is, in substance, as follows:

Section 1 provides that the county trustee of each county shall make quarterly settlements with the county judge, or chairman of the county court, of all school funds in his hands, arising from the State and county levies, or other sources, and also quarterly distribution of all of said funds in his hands, and make report of such action to the directors of the several school districts of the county and the county superintendent, and that the latter officers shall be present and have supervision of said settlements and the distribution of said funds.

Section 2 provides that the county trustee shall also make annual settlements of the school funds with the judge or chairman of the county court before July 15th of each year, for the school year ending June 30th previous, in which he shall be charged with all school taxes which have or ought to have come into his hands, and credited it with all proper releases, commissions and disbursements, and that this shall also be done in the pres-

ence and under the supervision of the county superintendent.

Section 3 requires the county superintendent to make quarterly reports to the state superintendent on or before the 15th day of January, April, July, and October of each year, showing the amount of the school funds of his county for the current year.

Section 4 requires that the county trustee, on or before January 15th of each year, make an annual report to the county superintendent and the state superintendent for the school year ending June 30th previous, showing in detail, upon blanks provided for that purpose, the public school funds which have come to the hands of the trustee from all sources, and how and for what purpose the same have been disbursed, and the balance, if any, on hand at the end of the school year.

Section 5 requires the county superintendent, whenever any portion of the school fund of his county is in danger of being lost, misappropriated, or in any way illegally disposed of, or not collected, to report the same to the county court and the state superintendent.

Section 6 makes it the duty of state superintendent, whenever it shall appear to him, from any report of the county superintendent, or otherwise, that any portion of the school fund has been misappropriated, illegally disposed of, lost, or uncollected, to employ a local attorney to recover and collect such funds, vesting in him the power to do so, and providing that the attorney may retain, as compensation for his services, out of the money

actually recovered and collected by him, not exceeding ten per cent. thereof, and that in no case shall he receive any compensation except a commission upon money actually collected, accounted for and paid over by him to the officer entitled to receive it.

Section 7 makes it a misdeameanor in office for any county trustee or superintendent to fail to make the reports provided for in this statute.

Section 8 repeals all laws or parts of laws in conflict with this act.

The subject of this statute is the collection and disbursement of the funds provided for the maintenance of the public schools of the State, arising from the tax levies made by the State and counties, and all other sources, in order to secure and make certain their proper application to the laudable and beneficial purposes for which they are intended. This is but one subject. There is nothing in the act that does not materially contribute to this end. The chief and effective features are the provisions requiring the trustees of the several counties of the State to make quarterly and annual settlements, showing the school funds which have or ought to have come into their hands, and the disposition they have made of them, under the supervision of the county superintendents, and requiring both the trustees and the county superintendents to make annual reports of these matters to the state superintendent, and making it the duty of the latter officer, whenever it ap-

pears to him that the said fund, or any part of it, has been illegally disposed of or misappropriated, to employ attorneys, whose fees for services rendered shall not exceed ten per cent. and be paid out of the money actually collected and paid over as the result of their services, to recover, collect and pay over the same to the legal custodian of said fund.

The settlements and reports which are required to be made beyond question tend to secure the prompt collections and proper disbursements of the funds, and the provisions giving the county superintendents supervision of the collection and application of the funds belonging to the schools of the entire State, are well designed to safeguard, preserve and secure them for the purpose for which they are paid by the people, on account of the special interest which these officers are supposed to have in the public schools under their control and direction; and the power vested in the state superintendent to employ local counsel whose compensation shall be limited and contingent upon success, in all cases where it appears to him that the funds have been misapplied or misappropriated, was clearly intended to provide for a vigorous and economical protection of the funds from local encroachments by an impartial officer, who was free from the influences and prejudices that may exist in any particular county affecting these matters.

These are all matters within the purview of the caption of the act and relate to the collection and disbursement

of the public school funds, or, in other words, the proper application of the moneys provided by law for school purposes. There is clearly no valid constitutional objection to this statute, or any of its provisions, and it is not only valid, but a most wise and salutary law, the vigorous enforcement of which will doubtless accomplish the purposes for which it was intended.

We also think that, if the contention of the complainants, that the employment of Mr. True, the agreement as to the amount of his fee and its payment out of the public school funds, were unauthorized, this case comes clearly within the remedial provisions of this statute. Conceding the truth of the charges of complainants' bill, as must be done on demurrer it is clear that the payment of one thousand dollars out of the public school funds in the hands of the trustee of Robertson county to Mr. True for the services rendered by him, was wholly unauthorized and a misappropriation of said funds, which may be redressed in this proceeding. It follows, therefore, that there was no error in the decree of the chancellor in overruling the demurrer of the defendants.

The gist of complainants' bill, as we have said, is that the employment of Mr. True in said cause, the settlement of the amount and the payment of his fee out of the funds belonging to the public schools of Robertson county in the hands of the trustee of that county for distribution as provided by law, and therefore the payment of said one thousand dollars to Mr. True, was an illegal disposition and misappropriation of said sum made by

the defendants True and Holman, for which they must account. These are the contentions of the complainants, and they must be sustained.

That C. G. Holman, as chairman of the county court of Robertson county, had no authority to bring a suit for the county, or to employ counsel for any purpose, is well settled. The power to bring suits for counties in proper cases, and to employ counsel for that purpose, is vested solely in the justices of the county, in quarterly court duly assembled. *McHenderson* v. *Anderson County,* 105 Tenn., 599; *Holtzclaw* v. *Hamilton County,* 101 Tenn., 340.

The power of the chairman to employ counsel for the county is confined to cases where the county is sued, and in these cases he is not authorized to contract for the fee to be paid, but it shall be fixed by the court trying the case. Code, section 520; Shannon's Ed., section 660.

The defendants, however, insist that the action of Holman in employing Mr. True to bring the suit of Robertson county against the Mayor and Aldermen of the town of Springfield was subsequently approved and ratified by the quarterly court, and that in this way the institution of the suit and employment of counsel was validated in all things as if originally done by that court, and this they seem to chiefly rely upon to sustain the validity of their action in the premises and defeat the recovery sought in this case.

This position is untenable for a number of reasons. Conceding that the quarterly court, in cases where it is

authorized to employ counsel and bring suit for the county, may approve and ratify the unauthorized action of the chairman in doing these things, and that the act of chairman Holman, now in question, was ratified by the quarterly court of Robertson county, and the order of the court to that effect properly proven, it would furnish the defendants no protection in this case.

The quarterly court of Robertson county had no power to employ counsel and procure a suit to be brought to prevent a misappropriation of the public school funds in the hands of the trustee of the county, and therefore its order approving the contract of its chairman in doing so is a nullity. The public school funds in the hands of the trustees of counties are not the property of the counties and their authorized agents have no control over them. The school fund does not go into the county treasury; it cannot be appropriated by the county authorities to any purpose, and it is not subject to the warrant of the chairman of the county court. The trustee is required to keep it, from whatever source it may be derived, separate and apart from all other county funds in his hands, and it is made a high misdemeanor for him to use or appropriate it to other or county purposes. Code, section 1167; Shannon's Ed., section 1395. He cannot dispose and distribute it for other purposes than the maintenance of the public schools of the county, and only for this purpose in the manner pointed out by special statutes. Whether previous to the passage of the act under which this suit was brought, a county, through its

quarterly court, had the right to bring a suit for the use of its school districts, or their scholastic population, to recover school funds misappropriated, or that the school districts or their scholastic population should have brought this suit, need not be here determined. Certain it is that this act vests the power to bring such suits in the state superintendent of public instruction; provides how he shall exercise it; limits the compensation of his attorney, and provides for its payment. Whether the state superintendent may bring the suit in his own name, or whether it shall be brought in the name of the State for the use of the school district or scholastic population of the district entitled to the fund misappropriated, is not provided by the statute. Perhaps the better practice would be to bring it in the name of the State by the state superintendent for the use of the school district or districts, or the scholastic population, prejudiced by the wrong done.

In the recent case of the *State and Others* v. *Mayor and Aldermen of the city of Knoxville,* 115 Tenn., 175, brought under this statute, the bill was filed by the state superintendent in the name of the State for its own use and that of Knox county, and in the name of the county, by order of its quarterly court, for its own use and for the use of its scholastic population residing outside of the corporate limits of Knoxville, and in the name of the trustee of Knox county, as legal custodian of the school funds belonging to Knox county, all of whom were joined as a precautionary measure; but the decree was pronounced in favor of the State, for the use of the public

school funds of the State and county as their interests might appear upon a reference ordered. It would have been sufficient for the state superintendent to have brought the suit in the name of the State, for the use of the school districts deprived of the funds, or their scholastic population, for they alone are the parties interested in recovering the fund when misappropriated. There is nothing in the claim that the state superintendent had refused to bring a suit for the purpose of that brought by Mr. True. There is ample remedy in such cases. The school districts affected, and their citizens, taxpayers, and scholastic population can maintain an action for illegal distribution of the school funds. *Finney* v. *Garner*, 110 Tenn., 67.

The county court, whether quorum or quarterly, has only such powers and jurisdiction as are vested in it by statute, and when the power or jurisdiction exercised by it is called in question, the party relying upon the action of the court must be able to point out the statute conferring the jurisdiction. *Judges' Salary Cases*, 110 Tenn., 370; *Johnson* v. *Brice*, 112 Tenn., 59.

There is no statute conferring upon the quarterly court the power to bring a suit in relation to the public school fund, and none authorizing it to appropriate that fund in the hands of the trustee of a county to the payment of counsel fees or other expenses of such suit. Chapter 36 of the Acts of 1897 is the only statute we have authorizing such suit, and certainly it is the only one authorizing counsel fees to be paid out of public school funds.

The quarterly court may appropriate the general revenue of the county to the payment of counsel fees in litigation which it is authorized to institute. Whether it can validly do so in litigation for the conduct of suits which it has no authority to bring is not here involved.

We could rest the decision of the case upon this point, but we think it proper, on account of their importance, to dispose of some other questions raised in the record, and equally fatal to the defenses interposed by the defendants.

If the quarterly court of Robertson county had had the power to file the bill brought against the mayor and aldermen of the town of Springfield and others, and to employ Mr. True for that purpose, or to subsequently approve the action of its chairman, C. G. Holman, in employing counsel and bringing suit, it did not do so.

The facts found by the court of chancery appeals are not only insufficient to establish the ratification of the action of the chairman by the quarterly court, but are also based upon incompetent evidence, heard over the objection of counsel for complainants. That court finds that the proceeding which it holds amounts to an approval and ratification of the action of the chairman in employing Mr. True and bringing the suit, entirely from parol evidence, and that no record whatever was made of the same. However formal and full those proceedings may have been, not having reached the minutes of the court, they do not constitute any valid action upon its part. Courts of record and legislative bodies—and quarterly

courts partake somewhat of the nature of both, and in this particular matter that of Robertson county was acting in its legislative capacity—speak only through their records. The law requires records to be made of their proceedings, and that they be signed. That a judgment or decree was pronounced, or an order made or a motion carried, if it be not spread upon the minutes of the court required to be kept for that purpose, avails nothing, and is as if no such proceeding was ever had. The action of a court or legislative body is not complete or effective for any purpose until the record evidencing it has been made and duly authenticated. The records of courts and legislative bodies are the sole witnesses of their proceedings, and they can only be proven by duly certified copies of such records. Parol evidence cannot be heard for this purpose. These are well established rules, and every principle of public policy imperatively forbids any departure from them. *Brooks* v. *Clairborne County,* 8 Baxt., 46; *Fraker* v. *Brazelton,* 12 Lea, 280, 281.

But if the quarterly court had the power to bring said suit, and there had been a valid ratification of the action of the chairman in doing so, properly proven, it could not avail the defendant anything in this case. There is no pretense in this record that the action of the chairman in agreeing upon the amount of the fee with Mr. True and drawing a warrant upon the trustee in his favor for such amount, payable out of the public school funds, was ever authorized, ratified or approved by the court. The chairman has no power in any case,

as we have seen, to contract for the amount of the fee to be paid the county's counsel, and he cannot draw a warrant upon the treasury of the county for any funds in the hands of the county trustee, in the absence of express statutory authority, without an appropriation having first been made for that purpose by the justices of the county in quarterly court assembled, who, thus organized, are alone authorized to act for the county in such matters. Code, sec. 402; Shannon's Ed., sec. 493.

Public money can only be paid out by the custodian thereof under an appropriation made by law, or, in case of county revenues, by the quarterly court, and then there must be in attendance and present three-fifths of the justices composing the court, and a majority of them voting for the measure. The manner in which the appropriation shall be made is specially provided for by the statutes, and without compliance with the same there can be no legal appropriation and disposition of public moneys. Code, sec. 4195; Shannon's Ed., sec. 6015-6019; *Connell* v. *County Judge of Davidson County,* 2 Head, 190; *State, for use,* v. *Kelly,* 111 Tenn., 583.

It is manifest, from what we have said, that this record does not disclose a case for allowing defendant True to retain any portion of the funds of the public schools of Robertson county wrongfully received by him, and for which he is now sued, upon any implied promise of Robertson county or the State superintendent for beneficial services rendered by him with their knowledge upon the authority of the case of *Land Co.* v. *Jellico,* 105

Tenn., 320, and cases there cited, but that this case rather comes within the principle announced in that of *Watterson* v. *Nashville*, 106 Tenn., 410.

The county court of Robertson county had no authority to make an express contract with Mr. True to bring the suit and render the services in question, and therefore there could be no implied promise to pay him for his services. It is not shown that the State superintendent had any knowledge of the suit, and therefore there can be neither an express or implied promise by him. The employment of Mr. True, as made, was also impliedly prohibited by the statute under which this suit is brought, chapter 36 of the Acts of 1897, and the fee agreed upon and paid to him was in direct violation of its provisions.

Nor does it clearly appear that the services rendered were beneficial to the school fund or those entitled to the benefit of it, as the county trustee might not have acted under the statute attacked as unconstitutional, and had he done so, the money wrongfully paid to the mayor and aldermen of the town of Springfield could have been recovered, as in the case of *Knox County* v. *Knoxville,* supra.

Again, there was no fund recovered and paid over, as required by the law applicable to this case, and the fee paid was largely in excess of the commission allowed by the statute, and cannot be said to have been fair and just under its provisions.

The decree of the chancellor ordering the fee of Mr.

True to be paid out of the school fund is also nugatory. This point is concluded by the case of *State* v. *Spurgeon*, 99 Tenn., 666, and need not be elaborated.

The decree of the court of chancery appeals will be reversed, as will that of the chancellor, so far as the defendants were allowed to retain any portion of the fund received, and a decree will be entered here in favor of the complainants and against the defendants True and Holman, and the official sureties of the latter, for the amount sued for, with interest from the date of its payment, and the costs of the cause.