R. L. HENRY v. GRAINGER COUNTY.*

(*Knoxville.* September Term, 1926.)

Opinion filed, November 20, 1926.

1. COUNTY COURT. Jurisdiction.

Our county courts have only such powers as are vested in them. or intrusted to them by Statute. (Post, p. 578.)

Cases cited: Railway Co. v. Wilson County, 89 Tenn., 597; Re-Districting Cases, 111 Tenn., 234; State ex rel. v. True, 116 Tenn., 294; Shelby County v. Memphis Abstract Co., 140 Tenn., 74; State ex rel. v. Turnpike Co., 151 Tenn., 150.

2. COUNTY COURT. Courthouse yard. Filling station.

Under Code 1858, sec. 404 Thompson's-Shannon's Code, sec. 496, conferring authority upon the county court of various counties to make "any order for the disposition of its property for the better exercise of its civil and political power, or as may be allowed by law," will not justify a court in undertaking to lease part of the courthouse yard for a long period as a filling station; such contract is ultra vires. (Post, p. 579.)

Citing: Code 1858, sec. 404; Thompson's-Shannon's Code, sec. 496.

3. SAME. Same. Lease of unused portion.

The lease of an unused portion of a lot purchased entirely for a courthouse yard, but so far, all of it has not been so used, will not justify a lease for a long period of a portion, excluding its public use. (Post, p. 580.)

Cases cited: Shelby County v. Memphis Abstract Co., 140 Tenn., 70; Keatley et al. v. County Court of Summers County et al., 70 W. Va., 267; Anno. Cas., 1913E, 523.

---

*As to power to lease of public buildings for private use, see annotation in 33 L. R. A. 118; 31 L. R. A. (N. S.) 580; 7 R. C. L. 948; 2 R. C. L. Supp. 480.

---

*Headnotes 1. Counties, 15 C. J., section 221; 2. Counties, 15 C. J., section 103.

FROM GRAINGER.

Appeal from Chancery Court of Grainger County.—
HON. ERNEST R. TAYLOR, Chancellor.

J. M. PEEBLES, for appellant.

W. N. HICKEY, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the
Court.

The complainant's bill avers that he entered into a con-
tract with Grainger county, whereby the county under-
took to lease to him a certain lot in the town of Rutledge
for the purpose of building and operating a filling sta-
tion. The lease was to be for a term of five years with
the privilege of renewal for a period of one year to twen-
ty-five years additional at a rental of $100 per year, pay-
able monthly. It is further alleged that the complainant
made two or three monthly payments, but that the county
delayed to execute a formal lease and finally repudiated
the contract altogether. The bill prays for specific per-
formance, or, in the alternative, for damages for breach
of contract. A demurrer was interposed by the county
which the Chancellor sustained and the complainant has
appealed.

There were several grounds of demurrer but the Chan-
cellor based his decree on the proposition that the con-
tract was *ultra vires*—beyond the power of the county
court of Grainger county. Since we think this conclusion

154 Tenn.—37.

of the Chancellor was correct, it is not necessary to consider other questions made by the demurrer.

While the bill is not so definite and full in its statements as might be desired, we gather therefrom that about twenty-five years ago Grainger county purchased a lot in the town of Rutledge as a site for the courthouse. It seems this lot is located on the main highway or street passing through the town; that the courthouse was erected thereupon; that all the lot has not been used as a courthouse yard. There is a fence enclosing part of the lot around the courthouse, but not all, and it is that portion of the lot not presently enclosed which the complainant proposed to lease. We infer from the bill that the *entire* lot was purchased for a courthouse yard, but so far not all of it has been so used. That portion outside the fence has been used as a hitching place for horses and a parking place for automobiles, and the county has derived no revenue therefrom.

Our county courts have only such powers as are vested in them or intrusted to them by Statute. *Railway Co.* v. *Wilson County,* 89 Tenn., 597.; *Re-Districting Cases,* 111 Tenn., 234; *State ex rel.* v. *True,* 116 Tenn., 294; *Shelby County* v. *Memphis Abstract Co.,* 140 Tenn., 74; *State ex rel.* v. *Turnpike Co.,* 151 Tenn., 150.

It is urged by the complainant that section 496, Thompson's-Shannon's Code (Code of 1858, section 404), confers authority upon the various counties to enter into such contracts as the one here sought to be set up. This section of the Code is as follows:

"Each county may acquire and hold property for county purposes, and make all contracts necessary or expedient for the management, control, and improvement

thereof, and for the better exercise of its civil and political powers; may make any order for the disposition of its property, and may do such other acts and exercise such other powers as may be allowed by law.''

Other sections of the Code authorize the erection of courthouses, jails and other necessary county buildings by the several county courts, regulate the purchases of sites for such buildings, and the nature and custody of such buildings. Thompson's-Shannon's Code, sections 500-506 (Code of 1858, sections 408-413). By section 506, Thompson's-Shannon's Code (Code of 1858, section 414), provision is made for the sale of a courthouse or jail under certain circumstances and the purchase of another site and the erection of a new building. Section 6044, Thompson's-Shannon's Code (Code of 1858, section 4214), provides that the county court may ''erect or control and dispose of public county buildings as provided in sections 500-506.''

Does the license to make ''any order for the disposition of its property,'' ''for the better exercise of its civil and political powers,'' or ''as may be allowed by law,'' justify a county court in undertaking to lease part of the courthouse yard for a filling station?

This is a fair test to be applied to the case before us. While the lot involved is not now enclosed as part of the courthouse yard, it was bought for that purpose, and immediately adjoins the enclosure. The bill intimates, and the court knows, that this section of the state is developing rapidly and it is practically certain, as the county of Grainger and town of Rutledge grow, a more extensive green will be required around the courthouse. No temporary and incidental lease is here proposed, but

a contract by which property bought for a public use may be withheld from that use for a period of thirty years. In this particular the case is to be distinguished from cases in other jurisdictions relied on by complainant.

*Shelby County* v. *Memphis Abstract Company,* is really decisive of the controversy presented. In that case the court considered the right of Shelby county to rent to the Memphis Abstract Company space for the use of employees of that company in the Register's Office, and said:

"We fail to find any statutory power granted to the quarterly county court or to the county commissioners of Shelby county to lease any part of the space in the offices designated for the use of county officials, and we think it clear that no such authority exists. The power, if existent, on exercise would give the lessee the right to control the space leased to him or it to the exclusion of other members of the public, and the leases could be multiplied, resulting in the serious embarrassment of others whose rights to use the registry rooms and equipment cannot be denied. . . . County building and their equipment are public property, held by the county, but in trust for the public use. 7 R. C. L., 948; *State* v. *Hart,* 144 Ind., 107, 43 N. E. 7, 33 L. R. A. 118, and note; *Decatur* v. *DeKalb County,* 130 Ga., 488, 61 S. E., 23.

"Any rule other than the one we declare would lead to entanglements and abuses against which the public should be protected as a matter of public policy. As pointed out by the Court of Civil Appeals, the moment rent is charged and collected, special privileges arise, and, too, in a place where equal privilege must prevail."

The same rule should be applied to the disposition of the courthouse yard, in our opinion, as to the space within the courthouse. In this climate, for the greater part of the year, the yards around our courthouses are not less used nor less necessary than the interior of such buildings.

Speaking of the importance of preserving for the public use the park surrounding the courthouse a learned judge of a neighboring State said:

"Upon its green grass, under the shade of its trees, our people have thus met time out of mind and rested during the sessions of the courts. Suitors, jurors, witnesses, instead of being tied down to benches in the hot, crowded courtroom, repair there to await the crier's call. There, too the children play. It is a park for the poor who have not the rich man's lawn. And where shall be held, in the hot summer, those great meetings of the people in the political canvass to hear the orators? How valuable within the experience of all of us is the courthouse ground for this important purpose." *Keatley et al.* v. *County Court of Summers County et al.,* 70 W. Va., 267, Anno Cas., 1913E, 523.

In the case just cited the court sustained the sale of part of the courthouse yard to the United States Government for the erection of a Federal building. The quotation is from a dissenting opinion. Consideration of the majority opinion satisfies us that the West Virginia court would not have agreed to a lease of part of the courthouse yard for a filling station. One reason for locating court buildings in ample grounds is to remove them from the noise of the streets to the end that the deliberations of the courts may be less disturbed. For the county to

sanction the location of a filling station on such premises seems to us an actual perversion of the uses for which the premises were acquired. It has been argued by counsel in this court on more than one occasion that a filling station is a nuisance in a residential section. It certainly is a noisy and odorous enterprise, and has no place on public property in immediate proximity to courts of justice in session.

The decree of the Chancellor is affirmed and the bill dismissed.