The STATE of Tennessee, Through Its
District Attorney General, Joe
BAUGH, etc., Plaintiff-Appellee,

v.

WILLIAMSON COUNTY HOSPITAL
TRUSTEES, et al.,
Defendants-Appellants.

Supreme Court of Tennessee,
at Nashville.

Nov. 5, 1984.

Thomas E. Fox, Fox, Johnston & Taylor, Franklin, for plaintiff-appellee.

Gerard Thomas Nebel, Bass, Berry & Sims, Nashville, Richard A. Buerger, Peterson, Buerger & Yost, Franklin, for defendants-appellants.

## OPINION

DROWOTA, Justice.

The District Attorney General for Williamson County, upon the relation of certain citizens of Williamson County, brought this quo warranto proceeding against the County Commission of Williamson County and the Williamson County Hospital Trustees in the Chancery Court, alleging that the Commission and the Hospital Trustees were unlawfully transferring the assets of the present Williamson County Hospital to a newly-created non-profit corporation. The Chancellor held that the transfer was beyond the authority of the County Commission and the Hospital Trustees and granted the Plaintiff's motion for summary judgment and denied Defendants' motion for summary judgment. Defendants appeal directly to this Court pursuant to T.C.A. § 16–4–108, which provides that the Supreme Court has direct appellate review over quo warranto proceedings.

The issue in this case is whether the Williamson County Commission and Williamson County Hospital Trustees have the authority to transfer the personal property of the present Williamson County Hospital to a new non-profit corporation. Resolution of this issue requires reference to the history of the present hospital.

In 1945, the General Assembly passed the "County Recovery and Post War Aid Act of 1945" (hereinafter referred to as the Post War Aid Act), T.C.A. § 5–11–101 et seq., which authorized counties to construct, operate and maintain any public works project, including hospitals. The statute also authorized the issuance of bonds to finance such projects. In 1954, the Williamson County Quarterly Court decided to build a hospital. The issuance of bonds was authorized on October 11, 1954, and property was acquired on September 2, 1955.

In 1957, the General Assembly passed a private act establishing a hospital district named the Williamson County Hospital on land owned by Williamson County. Act of Feb. 21, 1957, ch. 107, 1957 Tenn.Priv.Acts 332. The Act vested complete authority over the hospital district in the Hospital Trustees and it also required the Trustees to submit a budget and financial statement to the Quarterly Court.

The hospital was finished in 1958 and has been operated by the Hospital Trustees, with oversight by the Quarterly Court which is now the County Commission. In 1968 and in 1976, the Quarterly Court, pursuant to the Post War Aid Act, issued more bonds for the construction of additions to the hospital. The growth in population in Williamson County, however, convinced the Hospital Trustees and the County Commission to re-evaluate the adequacy of the present hospital. After deciding that a new hospital was in the best interests of the County, the County Commission and the Hospital Trustees formed a non-profit corporation, pursuant to the Tennessee General Corporation Act, T.C.A. § 48–1–101 et seq., called Williamson County Hospital, Inc. The Commission and the Trustees intended to transfer their interests in the personal property of the old hospital to the new corporation which would issue bonds to pay for the construction of the new hospital. Defendants assert that this plan was utilized to ensure that the County would not be financially responsible for repayment of the bonds. By separating ownership of the hospital from the County, the County's immunity from liability on the

bonds was guaranteed and, at the same time, the bonds retained their federal tax-exempt status. I.R.S.Rev.Rul. 63–20 established this procedure and it purportedly presents ideal conditions for the issuance of bonds by making them marketable as tax-exempt bonds without using the credit of the local government. The Internal Revenue Code provides an exemption for interest paid on "obligations of ... a State ... or any political subdivision [thereof] ...." Int.Rev.Code of 1954, § 103(a)(1). Treasury Regulations further provide that obligations issued "on behalf of" a state or political subdivision will be tax-exempt. Treas.Reg. § 1.103–1(b) (1956). Revenue Ruling 63–20, 1963–1 Cum.Bull. 24, provided that interest on bonds issued by a non-profit corporation organized under a state's general non-profit corporation law would be considered issued "on behalf of" a state or political subdivision if the following requirements are met:

(1) The corporation engages in activities which are essentially public in nature;

(2) The corporation is one which is not organized for profit (except to the extent of retiring indebtedness);

(3) The corporate income may not inure to any private person;

(4) The State or political subdivision thereof has a beneficial interest in the corporation while the indebtedness remains outstanding and will obtain full legal title to the property for which the indebtedness was incurred upon the retirement of such indebtedness; and

(5) The corporation has been approved by the State or political subdivision thereof, either of which must also have approved the specific obligations issued by the corporation.

It is undisputed that the Williamson County Hospital, Inc., meets the requirements for a 63–20 corporation.[1]

In March 1984, both the County Commission and the Hospital Trustees passed resolutions to effectuate the transaction. The resolutions approved the formation of the non-profit corporation and the transfer of the tangible and intangible personal property of the present hospital. The County retains the real property on which the hospital is located and has no plans for conveying it. On March 29, 1984, Plaintiffs filed suit, seeking a declaration that the proposed transfer of the hospital's personal property was unlawful.

Plaintiffs allege that the Private Act of 1957 bars the transfer of the hospital's personal property to the non-profit corporation. They contend that the proposed transfer of personal property would destroy the existence of the hospital district and that the private act would nullify the general power of the County to dispose of these assets. The Chancellor agreed with this argument, saying that the Defendants could not nullify the private act.

Defendants maintain that the private act merely created a management tool to oversee the day-to-day affairs of the hospital. They contend that the private act did not limit the County's powers under the Post War Aid Act but only supplemented the general law by dictating the managerial role of the Hospital Trustees.

■ We are of the opinion that there is no conflict between the general law (the Post War Aid Act) and the private act. When the statutes are read *in pari materia*, there is no conflict. Statutes relating to the same subject matter are to be read together. *See Stone v. Town of Crossville*, 187 Tenn. 19, 29, 212 S.W.2d 678, 682 (1948). The Court must always view the statute as a "scheme consistent in all its parts and uniform in its operation." *Needham v. Moore*, 200 Tenn. 445, 455–56, 292 S.W.2d 720, 725 (1956).

■ The general law explicitly provides that every county shall have the pow-

---

**1.** 63–20 corporations have been a popular method for financing health care projects. Defendants could also have utilized the special provisions for health, educational and housing facili-

ty corporations of T.C.A. § 48–3–301 et seq. For a comparison of the two methods of financing, see *Two Methods of Financing Health Care Facilities*, 4 Mem.St.U.L.Rev. 118 (1973).

er to "dispose of any property, real or personal, tangible or intangible, or any right or interest in any such property, in connection with any public works project ...." T.C.A. § 5–11–103(6). Under this provision of the Post War Aid Act, the County Commission has the authority to transfer the personal property of the present hospital. The private act which created the Hospital Trustees vested them with "the full, absolute and complete authority and responsibility for the operation, management, conduct and control of the business and affairs of the hospital district herein created." Acts of Feb. 21, 1957, ch. 107, 1957 Tenn.Priv.Acts 332, 335. When the Hospital Trustees approved the transfer of the personal property of the hospital, they were simply exercising the powers granted them by the private act.

Even if it may be assumed that there is conflict between the general law and the private act, the result in this case is unchanged. The law is clear that a private act cannot suspend or supersede the general law. In *Carter v. Beeler*, 188 Tenn. 328, 219 S.W.2d 195 (1949), the Supreme Court considered the effect of a private act that authorized the building of a hospital in Bradley County and which created a board of directors to supervise the hospital. Quoting from *Stone v. Town of Crossville*, 212 S.W.2d at 681, the Court found "no merit in the contention that these validating Acts suspend the general law." *Carter v. Beeler*, 188 Tenn. 328, 335, 219 S.W.2d 195, 198 (1949). *Wilson v. Town of Greenville*, 509 S.W.2d 495 (Tenn.App. 1973), is in accord. In *Wilson*, the Court held that the provisions of a private act passed in 1953 do *not* have the effect of repealing a public act enacted in 1949. Therefore, even if it may be said that there is a conflict between the private act and the Post War Aid Act, the latter controls and the transfer of property by the Defendants was pursuant to statutory authority.

Plaintiffs also argue that, notwithstanding the private act, the Post War Aid Act does not authorize the sale of county property that is in use for a public service.

Plaintiffs rely heavily on *Henry v. Grainger County*, 154 Tenn. 576, 290 S.W. 2 (1926), and *Shelby County v. Memphis Abstract Co.*, 140 Tenn. 74, 203 S.W. 339 (1918). *Henry* held that T.C.A. § 5–7–101, which authorizes counties to make order for the disposition of their property, did not authorize a county to enter into a long-term lease of a portion of its courthouse yard for use as a service station. *Memphis Abstract* involved the analagous situation of a lease of space in the registrar's office for private purposes. We believe these cases are unique on their facts and that strong public policy reasons underscored the holding in each case. In *Henry, supra,* the Court noted that a service station "has no place on public property in immediate proximity to courts of justice in session." 154 Tenn. 576, 582, 290 S.W. 2, 4 (1926). Similar considerations are absent in the case at bar. Plaintiffs' contention that the Post War Aid Act does not authorize the disposition of county property is without merit.

We are not unaware of the strong personal feelings that exist regarding the construction and location of a new hospital in a community. It is not the duty of this Court to decide if a new hospital is needed and, if it is needed, to determine its location. We recognize and sympathize with the resistance to change in this vital public service. The Williamson County Commission and the Williamson County Hospital Trustees have decided that the interests of the citizens of the county would best be served by the construction of a new hospital. That decision belongs to the locally-elected officials of Williamson County. After a review of the record in this case and the relevant legislative enactments, we are of the opinion that the actions of the Williamson County Commission and the Hospital Trustees were within their respective authorities.

The judgment of the Chancery Court is reversed and the cause is remanded for a dismissal of the action. Costs of this appeal are taxed against the Plaintiffs.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.