**PRYOR OLDSMOBILE/GMC COMPANY, INC., Plaintiff/Appellee,**

v.

**TENNESSEE MOTOR VEHICLE COMMISSION, Defendant/Appellant,**

and

**Pat Patterson Motors, Inc., Intervenor--Defendant/Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 10, 1990.

Permission to Appeal Denied by Supreme Court Dec. 31, 1990.

Cecil D. Branstetter, Carrol D. Kilgore, Nashville, for intervenor defendant/appellant.

Steve Roller, Tenn. Motor Vehicle Com'n, Nashville, for defendant/appellant.

Joe Lee Wyatt, Memphis, for plaintiff/appellee.

## OPINION

TODD, Presiding Judge.

The defendant, Tennessee Motor Vehicle Commission, and defendant-intervenor Pat Patterson Motors, Inc., have appealed from a judgment of the Trial Court reversing the administrative decision of the Commission denying the application of the plaintiff Pryor Oldsmobile/GMC Company, Inc., for a license to sell automobiles at a "branch location", and directing the Commission issue the license.

This cause has been the subject of a previous appeal to this Court which was concluded on May 13, 1988, by an opinion and judgment remanding the cause to the Commission for consideration in accordance with that opinion. The parties have not requested that the record of the former appeal be consolidated with that of the present appeal.

The present record contains a second application filed with the Commission on October 14, 1988. The application is in the name of "Pryor Oldsmobile" (omitting GMC Company, Inc.) and requests a license to operate as a motor vehicle dealer at 4451 Mall of Memphis, Memphis, Tennessee. In the space for "Financial Statement" is the following notation:

Previously filed Second location.

Other pertinent information in the application is:

Firm Name: Pryor Oldsmobile

Line Make: Oldsmobile

Manufacturer: General Motors

Description of Quarters ...: Mall of Memphis—a majority of the 1889 sq. ft. of space will be showroom

Number of Motor Vehicle Salesmen employed by you: 0 (at this location)

The application is signed:

Martin Pryor

President

The record also contains an order of the Commission dated November 14, 1988, as follows:

IN THE MATTER OF:

License Application of Pryor Oldsmobile/General Motors Corporation.

## ORDER

This cause came on to be heard before the Tennessee Motor Vehicle Commission upon the application of Pryor Oldsmobile/GMC, holder of an existing dealer's license for a branch showroom or additional location pursuant to TCA § 55–7–110(a), upon presentation of the application to the Tennessee Motor Vehicle Comission [sic] by counsel for Pryor Oldsmobile, Joe Lee Wyatt, attorney at law, upon the questions presented by the Commission members, from all of which it appears that the application for the license for an additional location and/or branch showroom was correct and appropriate in all respects with the exception of the inability of the applicant to provide for servicing and repairing of vehicles on site at the Mall of Memphis as such is defined by TCA § 55–17–102(7).

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Com-

mission that the application be denied for those reasons heretofore set forth.

On December 7, 1988, plaintiff, Pryor Oldsmobile/GMC Company, Inc., filed in the Trial Court a petition for judicial review of the above quoted order.

On May 5, 1989, Pat Patterson Motors was granted leave to intervene as a defendant.

On November 2, 1989, the Trial Court entered an order reversing the order of the Commission and requiring the issuance of the requested license.

On appeal, the Commission presents the single issue of the correctness of the judgment of the Trial Court. The intervenor presents the issue in the following form:

Upon judicial review, under the Administrative Procedure Act, of the Motor Vehicle Commission's refusal to issue a separate license to a licensed new automobile dealer to establish a branch sales room in a shopping mall, may the Court properly direct the issuance of such a license when (a) the Motor Vehicle Sales License Act does not create any such license as a motor vehicle dealer branch, and (b) the branch sales room did not have such facilities as to meet the statutory requisites for an "Established place of business" as defined by T.C.A. § 55–17–102(8).

The brief of the Commission simply adopts the brief of the intervenor.

The plaintiff-appellee presents the issue in the following terms:

Whether the trial court erred in reversing the Commission's denial of Pryor's application for a license when said application was correct and appropriate in all respects with the exception, in the Commissioner's opinion, regarding the inability of Pryor to provide for servicing and repairing of vehicles on site as defined by TCA § 55–17–102(7). [Now TCA § 55–17–102(8)]

The substance of the dispute is whether the Commission's order denying the requested license is reversible because the only ground for the decision was that the proposed dealership had no "on site" servicing and repairing facilities and relied upon similar facilities at another location where the applicant did provide such facilities.

The decision of the Trial Court was based upon the lack of statutory authority to deny the license on the ground stated.

T.C.A. Title 55, Chapter 17 is entitled "Motor Vehicle Sales Licenses".

Section 55–17–101 declares that licensing the distribution and sale of motor vehicles is necessary "to prevent frauds, impositions and other abuses upon its citizens".

Section 55–17–102 is entitled "Definitions", and contains the following:

(8) "Established place of business" means a permanent structure or structures owned, leased or rented by a motor vehicle dealer providing signs, facilities and office space used exclusively for buying, selling, displaying, advertising, demonstrating, servicing or repairing motor vehicles *or* functional or nonfunctional parts of motor vehicles *and* where replacement parts, repair tools and equipment as well as the books and records needed to conduct the business are kept. Such structure or structures must be physically apart from any other business and shall not include a private residence of any sort, tent or temporary stand;

(15) "Motor vehicle dealer" means any person not excluded by subdivision (17) engaged in the business of selling, offering to sell, soliciting or advertising the sale of motor vehicles or possessing motor vehicles for the purpose of resale either on his own account or on behalf of another, either as his primary business or incidental thereto; (emphasis supplied)

Sections 55–17–103—106 create the Commission and provide for its meetings and staff.

Section 55–17–107 provides as follows:

The commission is hereby vested with those powers and duties necessary and proper to enable it to fully and effectively carry out the provisions and objectives

of this chapter, including but not limited to:

(1) The authority to promulgate reasonable substantive and procedural rules pursuant to title 4, chapter 5; and

(2) The authority to prescribe all forms to be used by the commission in the transaction of its business including application forms, license forms, complaint forms, and renewal forms.

Section 55–17–107 requires a licensee to be a motor vehicle dealer.

Section 55–17–110 requires a license for each location and each "trade name or motor-line".

Section 55–17–111 prescribes the contents of an application for license, including the following:

(2) A complete description, including the city, town, or village with the street and number, if any, of the permanent, established place of business and such other and *additional place or places of business as shall be operated and maintained by the applicant in conjunction with the permanent, established place of business;* (emphasis supplied)

(7) A duly executed service agreement on forms provided by the commission with a factory authorized service or repair garage within a reasonable distance from the applicant's established place of business, if the motor vehicle dealer applicant does not have facilities at his established place of business to service or repair motor vehicles; and

Section 55–17–114 lists eighteen grounds upon which the Commission may deny, revoke or suspend a dealer's license. One of said grounds is:

(4) Has no established place of business for the purpose of selling, buying, displaying, repairing or servicing motor vehicles.

■ The mention of one subject in a statute means the exclusion of other subjects. *Southern v. Beeler,* 195 S.W.2d 857, 183 Tenn. 272 (1946).

The maxim, "Expressio unius est exclusio alterius" is not inflexible, and should be applied to accomplish the legislative inten-

tion. *Bd. of Pk. Com'rs. v. City of Nashville,* 134 Tenn. 612, 185 S.W. 694 (1916).

In view of the statutory enumeration of specific grounds for denial or cancellation of license, it does not appear that the Legislature intended that other unexpressed grounds be implied.

It is seen that the Commission is authorized to deny a dealer's license to one who has no *established place of business* used *primarily* for purposes of selling, buying, displaying, repairing *or* servicing motor vehicles. § 55–17–114(b)(4).

It is also seen that an "established place of business" is defined as a place used *exclusively* for buying, selling, displaying, advertising, demonstrating, servicing *or* repairing of motor vehicles *and* where replacement parts, repair tools, equipment books and records are kept. § 55–17–102(8).

■ The disjunctive "or" usually, but not always, separates words or phrases in an alternate relationship, indicating that either of the separated words or phrases may be employed without the other. In this meaning, the word "or" would not require that a licensed dealer conduct all of the activities listed in § 55–17–102(8) and 55–17–114(b)(4). However the word "or" is sometimes interpreted as conjunctive in a given context, in which event, the two statutes would require all of the listed activities.

The Commission evidently chose to follow the second (conjunctive) use of the word "or" by requiring that all of the listed activities (especially repair and servicing) be at the licensed location.

On appeal, it is not necessary that this court review this choice of interpretation for two reasons.

The first reason is that § 55–17–102(8) also contains the express conjunctive "and". Even though the activities in the first series are connected by "or", there is a second series connected to the first series by the conjunctive "and" and the activities in the second series are connected with each other by the conjunctive "and".

Thus, in the interpretation most favorable to the applicant, the statute authorizes the refusal of a license to an applicant who has no "established place of business" which is defined as a place used for at least one of the listed services *and* which has replacement parts, tools, equipment and books on the premises.

The second reason why the review of the interpretation of the statutes is unnecessary is that this Court concludes that there is nothing in the Motor Vehicle Sales Licensing Act to prohibit the licensing of multiple or branch locations of an established licensed dealer.

It is not shown that the proposed showroom in the shopping mall will contain all of the activities listed in §§ 55–17–102(8) and 55–17–114(b)(4) under either of the above interpretations. However, it is undisputed that the applicant does operate a full-service establishment at another location at a distance of about one and a half miles from the shopping mall.

T.C.A. § 55–17–111, quoted above, recognizes the business practice of having a "permanent, established place of business" (where all required facilities and activities would be found) and "other and additional place or places of business maintained by the applicant in conjunction with the permanent, established place of business", and that the lack of on site service and repair facilities may be supplied by other factory authorized facilities within a reasonable distance. This is precisely the business practice proposed by the applicant. It is not clearly delineated in the application as required by § 55–17–111, but it is clearly shown by the record before the Commission, and the refusal of the license was not based upon any imperfection of the application.

The Legislature has not seen fit to require that every licensed business location of an established dealer have on its premises all of the facilities required in the "Established place of business" defined in § 55–17–102(8). Absent such a requirement it appears to be sufficient that a licensee have one "Established place of business" with full service facilities in order to secure a license for "such other and additional place or places of business ... operated ... in conjunction with the permanent, established place of business."

The words, "in conjunction with" and "reasonable distance" suggest an opportunity for the exercise of discretion as to the reasonable convenience and accessibility of the headquarters facility to the "additional places of business". For example, a branch in a separate county might not be considered sufficiently accessible to be "in conjunction with" or "within a reasonable distance" of the full service headquarters. In the present case, no insistence is made that the services at the main facility of the applicant would not be reasonably and conveniently accessible to the customers of the proposed "branch".

For the reasons stated, the judgment of the Trial Court is affirmed. Costs of this appeal are adjudged against the intervenor-appellant. The cause is remanded to the Trial Court for any necessary further proceedings including remand to the Commission for proceedings consistent with the judgment of the Trial Court.

Affirmed and Remanded.

LEWIS, J., concurs.

KOCH, J., concurs with separate opinion.

KOCH, Judge, concurring.

I concur with the result reached by the majority. The Tennessee Motor Vehicle Commission cannot deny Pryor Oldsmobile permission to display and sell cars at a branch showroom simply because the showroom itself does not qualify as an "established place of business" pursuant to Tenn. Code Ann. § 55–17–102(8) (1988).

I.

Pryor Oldsmobile is a licensed motor vehicle dealer in good standing located in Memphis. In late 1986, it applied to the Tennessee Motor Vehicle Commission for permission to operate a branch showroom at the Mall of Memphis, approximately 1.5 miles from its primary place of business.

Its application hit a roadblock as soon as it was filed.

In January, 1987, the Commission denied Pryor's application because Pryor had not notified its competitors of its request to open a branch showroom. Pryor appealed, and the Chancery Court for Davidson County reversed the Commission, finding that notice to competitors was required only when a new competitive franchise was being established. This court affirmed the trial court. *Pryor Oldsmobile/GMC, Inc. v. Tennessee Motor Vehicle Comm'n*, App. No. 87–364–11 (Tenn.Ct.App. May 13, 1988).

Pryor filed an amended application on October 14, 1988. The Commission again denied the application on October 17, 1988, and on November 14, 1988, the Commission entered an order basing its decision on Pryor's "inability ... to provide for servicing and repairing of vehicles on site at the Mall of Memphis as such is defined by TCA § 55–17–102(7) [sic]."[1]

Pryor filed its second petition to review the Commission's decision. On March 28, 1989, the trial court entered an agreed order remanding the case to the Commission for further consideration. On April 10, 1989, the Commission denied Pryor's application again and "re-affirmed" its November 14, 1988 order. Since the Office of the Attorney General had declined to defend the Commission's decision, the Commission also voted to retain the lawyer who had represented the intervening dealer who had opposed Pryor's application.[2]

The trial court again reversed the Commission's decision on November 2, 1989. At the Commission's request, the trial court filed additional findings of fact and conclusions of law on December 12, 1989 stating that the Commission had given the licensing statutes a "strained interpreta-tion" and that a branch showroom need not have all the characteristics of an "established place of business."

## II.

The statutes governing dealer licensing do not deal specifically with dealer branching or satellite showrooms. The legislative history surrounding the enactment of these statutes contains no reference to the practice. However, it does not necessarily follow that dealer branching in the manner proposed by Pryor is prohibited.

When called upon to construe a statute, the courts should focus their attention on the statute itself unless ambiguities require them to look elsewhere. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 2–3 (Tenn. 1986); *Roddy Mfg. Co. v. Olsen*, 661 S.W.2d 868, 871 (Tenn.1983). They should also review the statute in light of other statutes dealing with the same subject. *State ex rel. Baugh v. Williamson County Hosp. Trustees*, 679 S.W.2d 934, 936 (Tenn. 1984); *Pritchard v. Carter County Motor Corp.*, 197 Tenn. 222, 224, 270 S.W.2d 642, 643 (1954).

Proper interpretations should give effect to the entire statute by giving its words their natural and ordinary meaning. *Oliver v. King*, 612 S.W.2d 152, 153 (Tenn. 1981). The courts should avoid absurd consequences, *Anderson v. Security Mills*, 175 Tenn. 197, 207, 133 S.W.2d 478, 482 (1939), and should avoid forced constructions that limit or extend the statute's meaning. *State v. Hinsley*, 627 S.W.2d 351, 354 (Tenn.1982).

This case does not concern whether a motor vehicle dealer may operate at more than one location. Tenn.Code Ann. § 55–17–110(a) (1988) specifically empow-

---

1. The reference to Tenn.Code Ann. § 55–17–102(7) (1988) in the November 14, 1988 order is clearly an error. Tenn.Code Ann. § 55–17–102(7) defines the term "distributor representative" which has no bearing in this case. Obviously, the Commission intended to base its decision on Tenn.Code Ann. § 55–17–102(8).

2. The Office of the Attorney General notified the Commission on March 28, 1989 that it would not defend the Commission's contemplated denial of Pryor's application. On May 1, 1989, it formally withdrew from the case and was replaced by a staff attorney employed by the Department of Commerce and Insurance. It is evident, however, that the laboring oar in this case is being stroked by the intervening dealer's lawyer.

ers the Commission to license multi-location dealerships,[3] and the parties themselves do not disagree that a dealership may be operated at more than one location.

The present dispute involves the parties' disagreement concerning the statutory requirements a dealer must meet in order to gain approval to operate a dealership at more than one location. The Commission and the intervenor assert that each location must qualify independently as an "established place of business."[4] Pryor Oldsmobile, on the other hand, asserts that each location need not be an "established place of business" as long as the dealer has one "established place of business."

The Commission's November 14, 1988 and April 10, 1989 orders leave room for speculation concerning their meaning. However, their most rational construction is that the Commission based its denial of Pryor's application on Tenn.Code Ann. § 55–17–114(b)(4). The Commission concluded that Pryor's proposed branch showroom was not an established place of business because it did not "provide for servicing and repairing of vehicles on site."

The trial court found the Commission's construction of Tenn.Code Ann. § 55–17–114(b)(4) to be strained, and I agree. Motor vehicle dealers are not required to have "on site" repair facilities in order to be licensed. Tenn.Code Ann. § 55–17–111(a)(7) (1988) specifically authorizes the Commission to grant dealer's licenses to applicants who have an acceptable service agreement with a factory authorized garage within a reasonable distance from the applicant's established place of business.[5]

Following the interpretation of Tenn. Code Ann. § 55–17–114(b)(4) urged by the Commission and the intervenor would not necessarily further the State's interest in regulating automobile dealers and would result in needless expenditures and economic waste. Dealers invest hundreds of thousands of dollars in their dealerships to satisfy the State's reasonable licensing requirements and to meet the needs of their customers. Requiring dealers to equip and staff branch showrooms at the same level as their main established place of business or showroom would be to force dealers to make prohibitively large financial investments in amounts disproportionate to their value or necessity.

I can find nothing in the licensing statutes or in their legislative history to indicate that the General Assembly intended such an unwise or anti-competitive result. Under the law as it stands today, I find that a licensed motor vehicle dealer who already has an established place of busi-

---

3. Tenn.Code Ann. § 55–17–110(a) provides, in part:

> Any person engaging ... in more than one (1) of the activities for which a license is required ... *or having more than one (1) location where such business is carried on or conducted,* shall be required to obtain and hold a separate, current license for each activity in which the person is engaged for each location (emphasis added).

4. Tenn.Code Ann. § 55–17–102(8) defines an "established place of business" as

> a permanent structure or structures owned, leased or rented by a motor vehicle dealer providing signs, facilities and office space used exclusively for buying, selling, displaying, advertising, demonstrating, servicing or repairing motor vehicles or functional or non-functional parts of motor vehicles and where replacement parts, repair tools and equipment as well as the books and records needed to conduct the business are kept.

While other statutes, such as Tenn.Code Ann. § 55–17–114(b)(4) (1988), contain abbreviated references to the elements of an established place of business, it is obvious that the General Assembly intended that Tenn.Code Ann. § 55–17–102(8) would be the primary, controlling definition of the term. After all, Tenn.Code Ann. § 55–17–102 specifically states that the definitions are controlling, and the courts should give terms a consistent meaning when they are used throughout a statute. *Parker–Harris Co. v. Tate,* 135 Tenn. 509, 520, 188 S.W. 54, 57 (1916).

5. The Commission did not deny Pryor's application either because Pryor could not provide factory authorized service for the cars it might sell at the branch showroom or because Pryor's repair facilities were not a "reasonable distance" from the branch showroom. Any attempt to do so would be to no avail under the facts in this record. Pryor will obviously provide factory authorized service to the cars it sells, and neither the Commission nor the intervenor introduced evidence that the 1.5 mile distance between the dealership and the branch showroom was unreasonable.

ness cannot be denied a permission to open a branch showroom solely on the ground that the branch showroom does not qualify in its own right as an established place of business.