# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 20, 2023 Session

## ALEXANDER STRATIENKO v. LISA STRATIENKO

**Appeal from the Circuit Court for Hamilton County**
**No. 13D2251          L. Marie Williams, Judge**

_____

### No. E2022-01802-COA-R3-CV
_____

This post-divorce action concerns the trial court's order finding the husband in civil contempt based on his failure to pay alimony to the wife and to maintain security for his alimony obligation as ordered. The trial court entered an order on April 29, 2022, finding the husband in contempt and assigning a punishment. Husband did not file a notice of appeal, or a specified motion tolling the time for filing a notice of appeal pursuant to Tennessee Rule of Civil Procedure 59.01, within thirty days of entry of the contempt order. As such, this Court has no subject matter jurisdiction to adjudicate the husband's issues concerning interpretation or alteration of the April 29, 2022 contempt order as sought in his untimely motion filed pursuant to Tennessee Rules of Civil Procedure 52.02 and 59.04. To the extent that the trial court denied relief to the husband pursuant to his motion based on Tennessee Rule of Civil Procedure 60.02, we find no abuse of discretion and affirm that ruling. We award to the wife her reasonable attorney's fees incurred on appeal, and we remand this issue to the trial court for determination of a reasonable amount of attorney's fees incurred by the wife in defending against the husband's appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Richard A. Heinsman, Jr., Chattanooga, Tennessee, for the appellant, Alexander Stratienko.

John P. Konvalinka, Lawson Konvalinka, and Michelle Allsup, Chattanooga, Tennessee, for the appellee, Lisa Stratienko.

# OPINION

## I. Factual and Procedural Background

This is the second appeal to this Court in the instant action, which originated in the Hamilton County Circuit Court ("trial court"). *See Stratienko v. Stratienko*, 529 S.W.3d 389 (Tenn. Ct. App. 2017) ("*Stratienko I*"). In *Stratienko I*, the husband, Alexander Stratienko ("Husband"), appealed the trial court's distribution of marital property; its alimony award to the wife, Lisa Stratienko ("Wife"); and its directive that Husband maintain a life insurance policy to secure his spousal support obligation. *Id.* at 389. As pertinent to this action, the *Stratienko I* Court described the factual and procedural background of the divorce action as follows:

> Dr. Alex Stratienko ("Husband") filed a complaint for divorce against Lisa Stratienko ("Wife") following twenty-four years of marriage. Two daughters were born of the marriage, both of whom had attained the age of majority prior to trial. At the time of trial, Husband was a cardiologist in Chattanooga who had started his own practice, Cardiac and Vascular Associates, P.C. ("CVA"), in 1999. The parties also began a business during the marriage known as McNeal Properties, LLC ("McNeal"), which constructed and manages the office building housing CVA and other professional practices.

> Before the parties' marriage in 1989, Husband had completed college and medical school and was in his third year of a cardiology fellowship at a hospital in Virginia. Wife had earned her Bachelor's degree and was in the process of obtaining a Master's degree while working as a ward secretary at the same hospital. Wife was employed outside the home during the initial years of the marriage until the birth of the parties' eldest daughter in 1992. By that time, the parties had moved to Pennsylvania to reside near Husband's aging parents, for whom Wife helped provide care. Wife explained that Husband's father was diagnosed with Alzheimer's Disease and could no longer drive and that Husband's mother had never driven. Therefore, Wife transported the couple to doctor's appointments and provided other care.

> In 1993, the parties, along with Husband's parents, relocated to Chattanooga, where Husband began employment with the Chattanooga Heart Institute. The parties' younger daughter was born in 1996. Wife served as a stay-at-home mother for the children for several years while Husband worked in the medical practice. Husband left his employment with Chattanooga Heart Institute in 1998 and was later sued by the practice regarding a non-compete agreement.

In 1999, the parties began CVA. Husband acknowledged at trial that Wife assisted him with CVA's business operations during the early years while he worked an arduous schedule. Wife described this period as "busy" in that Husband's father was extremely ill, Husband was working more and thus less involved at home, and Wife was providing care for the children and Husband's parents while helping Husband with the practice. Wife testified that she performed duties such as supervising staff, making deposits, filing charts, designing and decorating the office, interacting with CVA's accountant, managing the health insurance and retirement plans, and marketing the practice. Husband worked sixty to eighty hours per week at CVA. He also taught continuing education classes for other physicians, for which Wife designed and printed materials and advertising, managed hotel and catering arrangements, and maintained an accounting. Wife was not compensated for her work.

According to Wife, when Husband began his employment through CVA, his income increased tremendously. In 2000 or 2001, the parties built an approximately 5,000-square-foot home on Lookout Mountain. Both were involved in the design and construction of the home. When Wife's father passed away in 2002, Wife inherited one-third of his 1.3-million-dollar estate. From this inheritance, Wife deposited cash into the parties' joint account and also made deposits into the children's educational funds.

During this approximate timeframe, the parties, with the assistance of a friend named Oscar Brock, located a lot near all three Chattanooga hospitals, upon which they endeavored to construct a commercial building to accommodate CVA and other medical tenants. Husband, Wife, and Mr. Brock formed McNeal and, through the company, purchased the parcel and built a commercial building thereon. Wife testified that she and Mr. Brock met with architects and designed the facility. Wife further related that she worked closely with the builder and selected décor and fixtures. After CVA moved to this new location, Wife continued to perform work for CVA without compensation. According to Wife, she assumed some duties of a practice manager, often working forty or more hours per week. She also performed various responsibilities for McNeal, including designing and marketing the office space, creating a brochure, and procuring tenants. Wife likewise received no compensation for her work for McNeal.

In 2003, Husband became enmeshed in litigation with Erlanger Hospital regarding his hospital privileges. Wife testified that she "stood in" for Husband during depositions and performed work relevant to the case so

that Husband could continue to concentrate on his medical practice. According to Husband, Wife "spearheaded" his defense, spending tremendous amounts of time on the litigation. Husband also related that the proceedings cost them hundreds of thousands of dollars through the years, which proved difficult on their marriage, the children, and their quality of life. Wife opined that litigation expenses actually totaled approximately three million dollars.

The parties appear to agree that their marriage began to deteriorate during this time, although their opinions differ regarding the reasons. Their discord reached a zenith around Christmas 2011, when Wife claimed Husband became verbally abusive toward their eldest daughter and physically abusive toward Wife. The parties separated shortly thereafter, with Wife and the children remaining in the marital residence and Husband moving to a rental property. Husband admitted that following his departure, he removed $375,000 from the parties' joint checking account, leaving a balance of $5,000 for Wife's use. Husband did not dispute Wife's testimony that he informed Wife he would thereafter provide her an "allowance" in the amount of $5,000 per month. Husband asserted that this amount was commensurate with their pre-separation expenses so long as he continued to pay the taxes and insurance on the marital residence. Wife explained that Husband subsequently provided her with $5,000 per month for the first eight months of 2012 and then stopped sending her money altogether until the trial court ordered him to pay temporary alimony beginning in February 2014. According to Wife, because she had no other source of income, she was forced to liquidate her separate, inherited assets and to charge expenses on her credit cards in order to defray her living expenses and legal fees during that time.

In 2012, Mr. Brock instituted an action against Husband and Wife upon being "excluded" from McNeal by the parties due to his failure to meet a capital call. Husband filed the instant divorce action in November 2013. By the time of trial, the parties remained involved in litigation with Mr. Brock to determine their respective ownership interests in McNeal.

On December 26, 2013, Wife filed a motion in the case at bar seeking an award of alimony and child support *pendente lite*. The trial court entered a temporary order on January 17, 2014, directing the parties to participate in mediation and ordering Husband to pay temporary spousal support in the amount of $20,000 per month. The court conducted a hearing regarding temporary alimony in April 2014, subsequently ruling that Husband would pay Wife $18,000 per month pending trial. Wife was ordered to pay the taxes and insurance related to the marital residence.

- 4 -

Early in this litigation, the parties reached an agreement regarding certain issues, including that (1) Husband could expend monies to purchase a condominium for his own use, (2) Husband would continue to provide health and dental insurance coverage for Wife and the remaining minor child pending trial, (3) Husband would provide Wife with $45,000 to pay toward her attorney's fees, (4) Husband would continue paying temporary alimony of $18,000 per month, and (5) Wife would have unfettered access to the McNeal business records. An acrimonious environment intensified through the remainder of the proceedings, however, as each party filed numerous motions for relief, including several motions alleging contemptuous conduct by the opposing party and motions seeking sanctions. The trial court conducted a bench trial on June 2 and 3, 2014. At the conclusion of trial, Wife's counsel was afforded additional time to file the deposition of an asset valuation expert. On April 13, 2015, the court awarded Wife an additional $48,000 toward her legal expenses. In its order, the court noted that the parties had agreed to initiate the process of placing the marital residence on the market for sale.

The trial court issued a memorandum opinion on December 8, 2015. Noting that the parties had been married for twenty-six years, the court declared the parties divorced pursuant to Tennessee Code Annotated § 36-4-129. The court determined that both parties had credibility issues "because of the drive of each to accomplish a specific result." In support, the court stated: "While this is typical of many parties in a contested divorce, the intellectual capacity of these parties exacerbates the phenomenon."

With regard to the statutory factors relative to an equitable distribution of property, the trial court found that both parties made equal contributions to the marriage, financial and otherwise. Although Husband asserted that Wife wasted money and overspent following the parties' separation, the court found that Wife's spending was consistent with the lifestyle established during the marriage. The court also noted that despite Husband's contention that Wife "wasted" money on litigation, "[t]he Court finds it disingenuous of [Husband] to criticize [Wife's] involvement in litigation and the expense incident thereto when his litigation history is comparable." The court also determined that Wife had contributed a portion of her inherited assets to the parties' joint estate. The court concluded that Wife had not dissipated marital assets.

As demonstrated by the proof, both parties were in good physical and mental health and were of comparable ages, with Husband sixty-two

years of age and Wife fifty-eight years of age at the time of trial. The trial court determined that Husband possessed "vastly" greater vocational skills, employability, and earning capacity than Wife. The court also noted that although neither party contributed to the education of the other, Wife had relocated several times to support Husband's career and care for his parents.

Concerning an equitable distribution, the trial court attempted to fashion a division of marital property that was largely equal. Specifically, the court ordered that the marital residence be sold and the proceeds divided equally. Wife was awarded the parties' partial ownership interest in a condominium in South Carolina, which the court valued at $450,000. Husband was awarded a condominium purchased by the parties for Husband's mother. Various financial accounts and stocks were divided equally. Husband was awarded CVA at a value of $245,000. Due to the pending litigation regarding ownership of McNeal, the court declined to determine a value concerning that asset. Instead, Husband was ordered to transfer to Wife a sufficient interest in McNeal such that her ownership therein would equal that of Husband and CVA. The court ultimately awarded Wife a payment of $259,406 in cash in order to equalize the marital property distribution.

With reference to Wife's claim for spousal support, the trial court determined that alimony was appropriate because Husband had demonstrated an ability to pay and Wife had proven (with Husband conceding) that she manifested a reasonable level of need. The court found that the post-divorce standard of living expected to be available to Husband would be substantially greater than that expected to be available to Wife in the absence of alimony. Because neither rehabilitative nor transitional alimony would accomplish the objective of providing Wife a comparable standard of living to that enjoyed during the marriage, the court determined that long-term alimony was appropriate.

As to the appropriate amount of an alimony award, the trial court calculated Wife's reasonable needs post-divorce to be $15,500 per month. The court deducted Wife's anticipated income from investments of approximately $5,760 per month, establishing a remaining need of approximately $9,740 per month. As a result, the court awarded Wife alimony *in futuro* in the amount of $5,000 per month plus alimony *in solido* of $4,500 per month for ten years. With regard to the alimony *in solido* award, the court determined that Husband's greater income and ability to accumulate assets would enable him to retire early, with the court further opining that "his animosity towards [Wife] makes that possibility more

probable." The court also ordered Husband to maintain his $1,000,000 life insurance policy to secure Wife's alimony awards.

Because Husband had deducted sums from his alimony pendente lite payments despite previously being directed not to do so, the court specifically found such conduct to be contemptuous. The court also determined that Wife's needs preceding the award of assets from the court's equitable distribution exceeded her needs post-divorce, such that the court declined Husband's request to retroactively modify the temporary alimony. The court also declined to award attorney's fees to either party, concluding that each had the ability to pay his or her own fees. The court entered a final order on December 18, 2015, incorporating its written memorandum opinion.

Both parties filed motions seeking relief pursuant to Tennessee Rule of Civil Procedure 59, in addition to numerous other motions regarding enforcement of the trial court's adjudication. The trial court denied the Rule 59 motions, except to modify the equalizing payment owed by Husband by deducting a previously ordered $50,000 payment of attorney's fees to Wife. Husband timely filed the instant appeal.

*Id.* at 389-97.

On appeal, this Court modified the trial court's judgment to provide a lien on certain of Husband's assets in the amount of $540,000.00, instead of $1,000,000.00, for the purpose of securing Wife's spousal support award. Remanding the matter for a determination of which asset(s) to encumber, this Court otherwise affirmed the trial court's judgment regarding its distribution of marital property and alimony awards. *Id.* at 413.

Following the remand and subsequent litigation, the trial court entered an agreed final order ("Agreed Order") on March 2, 2020. In this order, the parties agreed that the periodic alimony payments would cease and that Husband would pay to Wife $8,000.00 per month as non-modifiable alimony *in solido* from February 1, 2020, through December 1, 2025. The parties also agreed that Husband's Charles Schwab account ("the Schwab Account") would serve as security for the alimony obligation and that he could only reduce the Schwab Account's balance by $75,000.00 per year, beginning in January 2021, so long as he was paying the required alimony payments. Husband was required to furnish account statements for the Schwab Account to Wife every six months. The parties further agreed that all motions pending at that time would be dismissed. Husband's attorney subsequently withdrew from the case, and the order allowing withdrawal noted that Husband had begun residing in Naples, Florida.

Wife filed a petition for contempt on June 17, 2020, alleging that Husband had stopped paying alimony *in solido* on May 1, 2020, and requesting a garnishment of the Schwab Account and an award of attorney's fees. After Husband unsuccessfully challenged service of process, the trial court entered an order determining that Husband had made a general appearance in the matter and setting a hearing regarding the petition for contempt. The court further ordered that Husband was "enjoined, barred, and prohibited from withdrawing any money or stocks or funds from" the Schwab Account prior to the trial date. Wife subsequently filed a motion for default judgment on September 4, 2020, asserting that Husband had never responded to the petition for contempt. On November 23, 2020, the court entered an order granting a default judgment to Wife.

The trial court conducted a hearing respecting the contempt petition on December 9, 2020. Husband did not appear despite having received notice. After hearing testimony from Wife and considering Wife's exhibits, the court entered an order finding that Husband had willfully disobeyed the court's prior orders by failing to make eight alimony payments and by emptying the Schwab Account. The court ordered Husband to be incarcerated for ninety days or until he paid Wife $67,360.00 to purge his contempt.[1] The court also awarded to Wife attorney's fees in the amount of $10,490.00. The court issued a corresponding mittimus on December 30, 2020.

On January 19, 2021, Husband filed a motion seeking to set aside or amend the trial court's default judgment and contempt order. Wife subsequently filed a motion for contempt, alleging that Husband had continued to fail to pay his alimony payments. On January 27, 2021, Wife sought a restraining order prohibiting Husband from moving his financial accounts, which order the trial court subsequently granted. In March 2021, Wife filed another petition for contempt regarding the Husband's continuing failure to pay spousal support.

On April 1, 2021, the trial court entered an order concerning Husband's motion to set aside or amend the contempt orders. The court found that inasmuch as Husband was self-represented when he filed his motion to challenge service in September 2020, the court would excuse "certain technical irregularities in his response." The court therefore construed his response as a special appearance rather than a general one. After hearing evidence concerning service of process, the court concluded that Husband had not been properly served with the petition for contempt in August 2020. On May 26, 2021, the trial court entered an order determining that due to improper service, it had lacked

---

[1] The trial court ordered that Husband's period of incarceration would be ninety days, which the court computed by multiplying ten days per each of nine acts of contempt (comprised of eight acts of missed alimony payments and one act of removing the funds from the Schwab Account).

personal jurisdiction over Husband and struck its orders from October and December 2020, including the order finding Husband in contempt and the resulting mittimus.

Meanwhile, Husband responded to the contempt petitions, and on May 17, 2021, Wife moved to amend her petition for contempt by alleging, *inter alia*, that Husband had closed the Schwab Account and requesting that Husband pay into the registry of the court the total remaining amount of alimony *in solido* owed. The trial court subsequently granted Wife's motion to amend and ordered Husband to deposit $448,000.00 with the registry of the court within ten days to serve as replacement security for the alimony payments. The court also decreed that Wife would be named as beneficiary of Husband's retirement accounts.

Following the filing of numerous petitions and responses by both parties, the trial court entered an order on April 29, 2022, resulting from a hearing the court conducted on August 6, 2021, concerning Wife's June 2020 contempt petition. In that order, the trial court found by clear and convincing evidence that Husband was in willful contempt of the court's prior orders because he had only paid one alimony payment subsequent to the March 2020 Agreed Order and that Husband owed Wife "$128,000, which represents unpaid alimony through August, 6, 2021." The court found that Husband maintained the ability to pay spousal support at all relevant times as demonstrated by his purchase of an expensive home in Florida and the substantial assets he was awarded in the divorce. The court accordingly awarded to Wife a judgment in the amount of $128,000.00 plus pre- and post-judgment interest.

The trial court further found in the April 29, 2022 order that Husband had moved his financial accounts, including the Schwab Account, and "had taken various actions to impede the ability of [Wife] to collect the unpaid alimony from the account specifically designated as security or from any account to which those monies were moved." Therefore, the court also ordered Husband to pay $40,272.80 to Wife in attorney's fees and $2,195.96 in court reporting fees and expenses. Moreover, the court ordered that Husband be "imprisoned in the Hamilton County Correction facility pursuant to T.C.A. § 29-9-105 until [the Schwab Account] is restored as security as ordered on March 2, 2020."

According to Husband, he was arrested for contempt on September 8, 2022, purportedly resulting from the mittimus issued on December 30, 2020.[2] On September 19, 2022, the trial court issued a mittimus resulting from the April 29, 2022 order, stating that Husband was to be incarcerated "until such time as there has been a purge of Contempt of Court" and specifically directing that Husband would be released upon the payment of $448,000.00 "for all or part of the replacement of what was security available

---

[2] Husband alleges that the December 30, 2020 mittimus was never properly recalled by the trial court clerk in accordance with the trial court's April 1, 2021 order.

in the Schwab account." On October 13, 2022, Husband filed a "Motion to Alter, Amend or Make Additional Findings of Fact, Relief from Judgment, and to Assess Damages Pursuant to T.C.A. § 29-9-105" ("the October Motion"). In the October Motion, Husband claimed, *inter alia*, that he

> was found in contempt by order entered 4/29/2022 for an alimony arrearage of $128,000 and for transferring funds from a Schwab investment account in the amount of $448,000, which was to be held as security for the agreed alimony. [Husband] is in arrears an additional $112,000 through 10/1/2022 for which a contempt finding has not been made.

Husband argued that the transfer of funds from the Schwab Account should have been regarded as an act of criminal, rather than civil, contempt and required a finding of willfulness beyond a reasonable doubt. Husband also asserted that the purge amount should have been set at $128,000.00, rather than $448,000.00, because the former was the amount deemed by the trial court in its April 2022 order to have been the alimony arrearage amount. In the alternative, Husband requested that an amount of damages be set pursuant to Tennessee Code Annotated § 29-9-105, for "no more than the amount of alimony currently due (without regard to contempt status), an amount no more than $240,000."

Following a hearing conducted by the trial court on October 24, 2022, regarding the October Motion, the court entered an order on December 19, 2022, finding that the contempt issue was "a matter of civil contempt" and declining to grant Husband any of the relief sought in the October Motion. The court specifically noted that "T.C.A. § 29-9-105 authorizes the Court to either require a security to be restored or to assess damages and does not mandate an assessment of damages." Husband subsequently filed a notice of appeal on December 27, 2022.

## II. Issues Presented

Husband presents the following issues for this Court's review, which we have restated slightly:

1.  Whether the trial court erred in characterizing the underlying contempt finding as civil contempt.

2.  Whether the trial court erred in setting Husband's "purge" amount at $448,000.00.

3.  Whether the trial court erred by failing to assess actual damages pursuant to Tennessee Code Annotated § 29-9-105.

- 10 -

Wife presents the following additional issues:

4. Whether this Court lacks subject matter jurisdiction because Husband's notice of appeal was untimely.

5. Whether this Court should award to Wife attorney's fees incurred on appeal.

### III. Standard of Review

As this Court has explained:

Findings of civil contempt . . . are reviewed under an abuse of discretion standard. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008). As stated by our Supreme Court:

> An abuse of discretion occurs when a court strays beyond the framework of the applicable legal standards or when it fails to properly consider the factors customarily used to guide that discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). Discretionary decisions must take the applicable law and relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Thus, reviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Mercer v. Vanderbilt Univ.*, 134 S.W.3d 121, 131 (Tenn. 2004); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003).

*Id*. In reviewing the trial court's finding of civil contempt, we review its factual findings with a presumption of correctness unless the evidence preponderates otherwise pursuant to the standard contained in Tennessee Rule of Appellate Procedure 13(d). *Id*. at 357.

*State ex rel. Murphy v. Franks*, No. W2009-02368-COA-R3-JV, 2010 WL 1730024, at *4 (Tenn. Ct. App. Apr. 30, 2010).

## IV.  Subject Matter Jurisdiction

Wife has raised, as a threshold issue, whether this Court lacks subject matter jurisdiction concerning this appeal due to Husband's failure to timely file a notice of appeal with respect to the trial court's April 29, 2022 contempt order.  Husband's notice of appeal was filed in this Court on December 27, 2022, and Husband stated therein that he was appealing from the trial court's "final order" entered on December 19, 2022.  However, the December 19, 2022 order resulted from a hearing concerning the October Motion wherein Husband requested that the trial court alter or amend the April 29, 2022 contempt order, make additional findings of fact, or make an assessment of damages pursuant to Tennessee Code Annotated § 29-9-105.

As such, the April 29, 2022 order was the pertinent order wherein the trial court determined Husband to be in contempt due to his lack of compliance with the court's prior order because he had failed to make his required spousal support payments to Wife and failed to maintain the balance in the Schwab Account as security for the alimony obligation.  We reiterate that in the April 29, 2022 order, the court not only determined that Husband was in contempt but also awarded to Wife a judgment in the amount of $128,000.00, plus pre- and post-judgment interest, due to Husband's failure to pay the required alimony payments.  The court further ordered that Husband be "imprisoned in the Hamilton County Correction facility pursuant to T.C.A. § 29-9-105 until [the Schwab Account] is restored as security as ordered on March 2, 2020."

This Court has expounded on contempt proceedings as follows:

> "Contempt proceedings are sui generis and are incidental to the case out of which they arise." *Baker v. State*, 417 S.W.3d 428, 435 (Tenn. 2013) (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003)).  The term "sui generis" means "[o]f its own kind or class; unique or peculiar."  Black's Law Dictionary (11th ed. 2019).  "The contempt proceeding may be 'related to the underlying case but independent from it.'" *Ballard v. Cayabas*, No. W2016-01913-COA-R3-CV, 2017 WL 2471090, at *2 (Tenn. Ct. App. June 8, 2017) (quoting *Green v. Champs-Elysees, Inc.*, No. M2013-00232-COA-R3-CV, 2014 WL 644726, at *7 (Tenn. Ct. App. Feb. 18, 2014)).

> A contempt proceeding "often stems from an underlying proceeding that is not complete." *Doe*, 104 S.W.3d at 474.  However, "[a] judgment of contempt fixing punishment is a final judgment from which an appeal will lie." *Hall v. Hall*, 772 S.W.2d 432, 436 (Tenn. Ct. App. 1989) (citing *State v. Green*, 689 S.W.2d 189 (Tenn. Crim. App. 1984)).  A contempt judgment "becomes final upon entry of the judgment imposing a punishment therefore." *State ex rel. Garrison v. Scobey*, No. W2007-

02367-COA-R3-JV, 2008 WL 4648359, at *4 (Tenn. Ct. App. Oct. 22, 2008) (citing *Green*, 689 S.W.2d at 190). The contempt ruling must be appealed within thirty days. *Blakney v. White*, No. W2018-00617-COA-R3-CV, 2019 WL 4942436, at *4 (Tenn. Ct. App. Oct. 8, 2019). "'It matters not that the proceedings out of which the contempt arose are not complete.'" *Moody v. Hutchison*, 159 S.W.3d 15, 31 (Tenn. Ct. App. 2004) (quoting *Green*, 689 S.W.2d at 190). "An order that imposes punishment for contempt 'is a final appealable order in its own right, even though the proceedings in which the contempt arose are ongoing.'" *Ballard*, 2017 WL 2471090, at *2 (quoting *Coffey v. Coffey*, No. E2012-00143-COA-R3-CV, 2013 WL 1279410, at *5 (Tenn. Ct. App. Mar. 28, 2013)).

*Stark v. Stark*, No. W2019-00650-COA-R3-CV, 2020 WL 507644, at *3 (Tenn. Ct. App. Jan. 31, 2020). *See also Ballard v. Cayabas*, No. W2016-01913-COA-R3-CV, 2017 WL 2471090, at *2 (Tenn. Ct. App. June 8, 2017).

In *Ballard*, this Court was asked to determine whether the appellant's notice of appeal was timely filed when the trial court had entered a series of orders concerning the underlying contempt allegations. *See id.* at *3. Accordingly, the *Ballard* Court explained: "When analyzing which of multiple judgments constitutes the final judgment, we consider whether the subsequent judgment affected the substantive legal rights and obligations settled by the first judgment." *Id.* (citing *Ball v. McDowell*, 288 S.W.3d 833, 837 (Tenn. 2009)). The *Ballard* Court therefore concluded that the time for filing a notice of appeal from the contempt ruling began to run from the first order finding the existence of contempt and imposing punishment rather than from a subsequent order entered by the trial court that merely attached and incorporated related findings of fact and conclusions of law. *See Ballard*, 2017 WL 2471090, at *3.

In the case at bar, the trial court's April 29, 2022 order was a final contempt order because it determined that Husband had engaged in contemptuous conduct and imposed a punishment for that conduct. Specifically, the court ordered that Husband be "imprisoned in the Hamilton County Correction facility pursuant to T.C.A. § 29-9-105 until [the Schwab Account] is restored as security as ordered on March 2, 2020." Ergo, the time for filing a notice of appeal (or specified post-trial motion pursuant to Tennessee Rule of Civil Procedure 59.01) began to run on April 29, 2022.[3]

---

[3] The thirty-day time limit for filing a notice of appeal may be extended by the timely filing of one of four specified motions pursuant to Rule 59.01:

> (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; or (4) under Rule 59.04 to alter or amend the judgment.

- 13 -

Husband posits that the October Motion, wherein he sought to alter or amend the contempt judgment, was timely filed because it was filed within thirty days of issuance of the September 19, 2022 mittimus. We disagree. As the Tennessee Court of Criminal Appeals has elucidated:

> "A mittimus is similar to an execution after judgment in a civil case. It is the means by which the judgment of the court is carried out." *Richmond v. Barksdale*, 688 S.W.2d 86, 88 (Tenn. Ct. App. 1984). Statute requires the filing and maintenance of the "mittimus or process by which any prisoner is committed or discharged from jail" or an attested copy thereof. T.C.A. § 41-4-106. A mittimus is an "affidavit[] to the sheriff or jailer as to the defendant's sentence," and is "essentially directory in nature." *Jack P. Carr v. David Mills, Warden*, No. E2000-00156-CCA-R3-PC, 2000 WL 1520267, at *1 (Tenn. Crim. App. Oct. 13, 2000). "The purpose of the mittimus is to tell the sheriff, who was not a party to the suit that produced the judgment, who[m] he is to take into custody, why he is to take him, where he is to take him, and for how long." *Richmond*, 688 S.W.2d at 88. <u>The mittimus, itself, however, does not constitute a judgment.</u> *Clifford L. Taylor v. State*, No. W2003-02198-CCA-R3-PC, 2005 WL 578825, at *3 (Tenn. Crim. App. Mar. 11, 2005); *Jack P. Carr*, 2000 WL 1520267, at *1. It does not require the judge's signature. *Id*.
>
> "The problem with the case before us is that the petitioner is attacking the mittimus rather than the judgment." *Richmond*, 688 S.W.2d at 88. . . . [I]nsofar as the mittimus is in conflict with the judgments, it is void. *Id*. at 89 ("Since the mittimus is a ministerial order, an error in the mittimus that is contrary to the judgment should not vitiate the judgment— i.e., the order of confinement."); *see Marvin Anthony Matthews v. Charles C. Noles*, No. 02 C01-9206-CC-00140, 1993 WL 46546, at *2 (Tenn. Crim. App. Feb. 24, 1993) (holding that the minute entry was a valid judgment and that any technical error in the mittimus did not render the judgment illegal).

*State v. Lawson*, No. E2021-00664-CCA-R3-CD, 2022 WL 3592675, at *9 (Tenn. Crim. App. Aug. 23, 2022) (emphasis added).

Accordingly, the mittimus issued on September 19, 2022, was nothing more than a ministerial order directing that Husband be taken into custody based on the prior contempt finding and specifically directing that Husband be released upon the payment of

---

As Rule 59.01 further provides: "These motions are the only motions contemplated in these rules for extending the time for taking steps in the regular appellate process."

$448,000.00 "for all or part of the replacement of what was security available in the Schwab account." This direction is in accord with the trial court's April 29, 2022 contempt order, which provided that Husband would be "imprisoned in the Hamilton County Correction facility pursuant to T.C.A. § 29-9-105 until [the Schwab Account] is restored as security as ordered on March 2, 2020."[4] We therefore reiterate that Husband's time for filing a notice of appeal (or specified post-trial motion pursuant to Tennessee Rule of Civil Procedure 59.01) began to run on April 29, 2022, when the court entered its contempt order, and not from September 19, 2022, the date the court issued the resulting mittimus.

Tennessee Rule of Appellate Procedure 4(a) provides that a notice of appeal "shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]" As our Supreme Court has explained, "[t]he thirty-day time limit for filing a notice of appeal is mandatory and jurisdictional in civil cases." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004). Accordingly, because Husband failed to file a notice of appeal or any of the motions specified in Rule 59.01 for more than thirty days following entry of the April 29, 2022 contempt order, we maintain no jurisdiction to consider issues on appeal concerning interpretation or alteration of the terms of that order, including the finding of civil contempt and the amount set to purge said contempt.

## V. Rule 60.02 Relief

In his reply brief,[5] Husband points out that in the October Motion, he not only sought relief predicated on Tennessee Rules of Civil Procedure 52.02 and 59.04 but also sought relief pursuant to Tennessee Rule of Civil Procedure 60.02 in the form of an alteration of the purge amount set by the trial court to reflect an award of "accrued"

---

[4] Husband further postulates that the September 19, 2022 mittimus constituted a "new final action" of the trial court because in it, the court "selectively" chose the punishment contained in the April 29, 2022 order related to the Schwab Account over the punishment of ten days' incarceration imposed in a later contempt order entered on May 5, 2023, following a hearing conducted on May 24, 2022. This argument is unavailing because (1) the May 5, 2023 order specifically addressed contemptuous conduct that occurred after September 8, 2021, because Husband's conduct up to that time had already been addressed in the April 2022 contempt order and (2) although the hearing on the subsequent contemptuous conduct occurred in May 2022, no ruling appears in the record until the May 5, 2023 order, which was entered many months following the September 2022 mittimus. Inasmuch as "Tennessee law is clear that the trial court speaks through its written orders," *see In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016), we determine that the trial court did not engage in a "selective" choice of punishment—rather, the trial court clearly issued the September 19, 2022 mittimus to enforce the April 29, 2022 contempt order.

[5] We acknowledge that Wife has filed a motion with this Court seeking to strike Husband's reply brief because it does not comply with the requirements of Tennessee Rule of Appellate Procedure 30(e). Having fully considered the motion and in the interest of judicial economy, we conclude that the reply brief shall not be stricken in this instance, although we do caution Husband's counsel to ensure compliance with the Tennessee Rules of Appellate Procedure and the Rules of the Court of Appeals in future filings.

damages. Husband requested in the October Motion that the court set an amount of damages pursuant to Tennessee Code Annotated § 29-9-105 (2012), which provides:

> If the contempt consists in the performance of a forbidden act, the person may be imprisoned until the act is rectified by placing matters and person in status quo, or by the payment of damages.

Although the trial court did not expressly determine in its December 2022 order whether such relief was or could be properly sought pursuant to Tennessee Rule of Civil Procedure 60.02, the court did state that "T.C.A. § 29-9-105 authorizes the Court to either require a security to be restored or to assess damages and does not mandate an assessment of damages." As such, the court refused to grant Husband relief.

Assuming, *arguendo*, that the trial court's ruling was based on Tennessee Rule of Civil Procedure 60.02(5), which provides for relief from a final judgment for "any other reason justifying relief from the operation of the judgment" and which is the only potentially applicable provision here, this Court possesses subject matter jurisdiction to adjudicate an issue on appeal concerning the trial court's ruling because such motions need only be brought within a "reasonable" time following entry of the judgment. *See* Tenn. R. Civ. P. 60.02(5). Of course, we review the trial court's denial of a Rule 60.02(5) motion for an abuse of discretion. *Hussey v. Woods*, 538 S.W.3d 476, 487 (Tenn. 2017). As our Supreme Court has clarified: "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

In this matter, the trial court determined that it possessed discretion, based on the language of Tennessee Code Annotated § 29-9-105, to either imprison Husband and "require a security to be restored or to assess damages[.]" The court further noted that the statute "does not mandate an assessment of damages." We agree. As this Court has previously recognized, the "disjunctive 'or' usually, but not always, separates words or phrases in an alternate relationship, indicating that either of the separated words or phrases may be employed without the other." *Pryor Oldsmobile/GMC Co., Inc. v. Tenn. Motor Vehicle Comm'n*, 803 S.W.2d 227, 230 (Tenn. Ct. App. 1990). Ergo, the trial court has the discretion to choose whether to "imprison[] [the contemnor] until the act is rectified by placing matters and person in status quo" or to order "payment of damages." Moreover, a trial court's decision concerning whether to impose any sanctions for contempt is reviewed pursuant to an abuse of discretion standard. *See Rose v. Rose*, No. E2005-01833-COA-R3-CV, 2006 WL 1132086, at *4 (Tenn. Ct. App. Apr. 27, 2006). Based upon our thorough review of the record, we conclude that the trial court did not abuse its discretion in determining that Husband was not entitled to relief from the April 29, 2022 contempt order pursuant to Tennessee Rule of Civil Procedure 60.02(5).

## VI. Attorney's Fees on Appeal

We now turn to Wife's final issue presented—whether she is entitled to an award of attorney's fees incurred on appeal. As this Court has previously elucidated:

"With regard to cases involving post-divorce alimony disputes, Tenn. Code Ann. § 36-5-103(c) clearly authorizes a recovery of reasonable attorney's fees incurred in enforcing an order awarding alimony." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at *12 (Tenn. Ct. App. Aug. 23, 2004) (citing *Brewer v. Brewer*, 869 S.W.2d 928, 936 (Tenn. Ct. App. 1993)).

\* \* \*

"The statute authorizes awards of attorney's fees incurred at trial as well as on appeal." *Malkin* [*v. Malkin*], 475 S.W.3d [252,] 263 [(Tenn. Ct. App. 2015)]. Deciding whether to award attorney's fees incurred on appeal pursuant to this statute is a matter within the discretion of this Court. *Id*. However, as this Court has previously observed,

'Alimony is only awarded in the first instance to an economically disadvantaged spouse who has a demonstrated need for the support. Absent a showing in a modification proceeding that the need no longer exists, requiring the recipient to expend that support for legal fees incurred in defending it would defeat the purpose and public policy underlying the statute on spousal support. Additionally, the possibility of being burdened with a former spouse's attorney's fees helps deter unwarranted or unjustified attempts by an obligor to evade or reduce an existing support obligation.'

*Henderson v. Henderson*, No. M2013-01879-COA-R3-CV, 2014 WL 4725155, at *12 (Tenn. Ct. App. Sept. 23, 2014) (quoting *Evans*, 2004 WL 1882586, at *13).

*Barnes v. Barnes*, 614 S.W.3d 90, 105 (Tenn. Ct. App. 2019). Based on our review of the record, we determine that Wife should not be forced to expend her resources in defending against this appeal involving Husband's failure to timely pay his alimony obligation. We therefore conclude that Wife should be granted an award of attorney's fees incurred on appeal, and we remand this issue to the trial court for entry of an order determining a reasonable amount of attorney's fees incurred by Wife.

## VII.  Conclusion

For the foregoing reasons, we determine that this Court lacks subject matter jurisdiction to adjudicate Husband's issues concerning interpretation or alteration of the April 29, 2022 contempt order as sought in his untimely motions filed pursuant to Tennessee Rules of Civil Procedure 52.02 and 59.04.  To the extent that the trial court denied relief to Husband pursuant to Tennessee Rule of Civil Procedure 60.02, we find no abuse of discretion and affirm that ruling.  We award to Wife her reasonable attorney's fees incurred on appeal, and we remand this issue to the trial court for determination of a reasonable amount of attorney's fees incurred by Wife in defending against Husband's appeal.  Costs on appeal are assessed to Husband, Alexander Stratienko.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 18 -